MITCHELL S. MCININCH, APPELLEE, v. AUBURN MUTUAL LIGHTING & POWER COMPANY, APPELLANT.

FILED MARCH 18, 1916. No. 18764.

Electricity: FRANCHISE: METER RENTALS. Where the city of Auburn, Nebraska, passed an ordinance permitting an electric lighting and power company to install and maintain a lighting plant in said city for the use of the same and the citizens thereof, and by the terms and conditions of said ordinance, which the company accepted, it was to furnish a meter for the use of each of the consumers to measure the electricity furnished by said company, and while the rate at which the light should be furnished was set forth in the ordinance, there was no provision in the ordinance to the effect that any rental should be charged for the use of said meter, it will be considered that the meter should be furnished by the company to the consumer free of charge and as a necessary part of the equipment of the company's plant.

APPEAL from the district court for Nemaha county: JOHN B. RAPER, JUDGE. *Affirmed.*

*Neal & Armstrong* and *H. A. Lambert,* for appellant.

*McIninch & Rankin, contra.*

HAMER, J.

This is an appeal from a judgment of the district court for Nemaha county. It is alleged by the. plaintiff, and appellee, that he brings this case in his own right and at the instance of numerous citizens of Auburn for the purpose of procuring a judicial construction of section 5, of Ordinance No. 189, of the Revised Ordinances of the city of Auburn, and to settle a controversy between the citizens of Auburn and the defendant company; that the plaintiff brought the action while he was city attorney for said city of Auburn. The plaintiff alleges that the defendant, the Auburn Mutual Lighting & Power Company, is a corporation organized for the purpose of furnishing electric light and power to the said city of Auburn and to the inhabitants thereof, and that it has its principal place of business in said city; that the city of Auburn is a municipal corporation organized under the laws of Nebraska as a city of the second class, and being in the county of Nemaha, and state of Nebraska; that the plaintiff is a resident and citizen of said city, and patron of the defendant company; that on the 12th day of July, 1901, said city passed and approved Ordinance No. 189, authorizing and empowering said defendant company to furnish electric light and power to said city and to the citizens thereof under the provisions and according to the terms of said ordinance, a copy of which is attached to the petition and made a part thereof; that on the 1st day of August, 1901, the said company filed with the city clerk of said city of Auburn its acceptance of the terms and provisions of said Ordinance No. 189; a copy of said acceptance is also attached to the plaintiff's petition; that at the request of the plaintiff said company caused to be

placed on the premises of the plaintiff's landlord, and for
the use of plaintiff in measuring the amount of electricity
consumed by him, a meter, which said meter ever since the
placing of the same has been used by the plaintiff for
measuring the electricity consumed by him for lighting
purposes in his office at Auburn; that said meter was in
use by the plaintiff in measuring the electricity so con-
sumed by him for light during the months of October,
November and December, 1913; that on the 2d day of
January, 1914, said defendant company by its manager,
E. E. Elliott, demanded of the plaintiff the sum of 25 cents
a month for the use of said meter for said months of
October, November and December, 1913, or the sum of 75
cents for said services in payment of rental for the use
of said meter, which demand the plaintiff refused, and
continues to refuse, to pay; that, because of such refusal,
the said Elliott, acting on behalf of said company, threat-
ens to, and is about to, take out and remove said meter,
and will deprive·the plaintiff of the use of the same or any
means of measuring the electricity consumed, thus caus-
ing great and irreparable injury; that, unless said defend-
ant is restrained from removing said meter, it will remove
and take the same away from the plaintiff, and will de-
prive the plaintiff of light in his office, to his great and
irreparable injury; that said action on the part of said
defendant in collecting, and attempting to collect, rent
for said meter is in violation of, and in conflict with, the
terms and provisions of said ordinance.   The plaintiff
prays for a temporary order of injunction restraining the
defendant from removing said meter until final hearing of
this cause, and then that the injunction heretofore
granted shall be made perpetual, 'and that the plaintiff
may recover his costs.

The part of the ordinance relating to the subject under
consideration reads: "Section 5.   The rates charged to
consumers of light or power shall be such as to enable said
company to pay such part of costs of construction as may
not be covered by sale of stock, its organizing expenses,

the cost of maintaining its light and power system, and an annual dividend to its stockholders of not more than 12 per cent., under the condition that the said electric light and power company shall charge subscribers for lights not to exceed 75 cents per month for all night service or 55 cents per month for midnight service, per sixteen candle power; or when sold on the meter basis, not to exceed 15 cents per thousand watts, and it shall be compulsory upon said electric light and power company to put in electric meters when required by patrons of said company. The city of Auburn shall not be charged a higher rate for either light or power than the rate charged private citizens."

Application was made to the county judge, who granted a restraining order enjoining the defendant from removing the meter described in the petition, upon the plaintiff executing an undertaking in the sum of $50. The record shows that the understanding was executed and approved, and subsequently that there was a motion made before the district court to dissolve the restraining order, and that the motion was overruled.

The defendant answered that the petition did not state facts sufficient to constitute a cause of action, and admitted the passage and approval of the ordinance; also admitted that at the request of the plaintiff it installed a meter for the plaintiff for the use of electricity for lighting purposes; and that it did on or about the 2d day of January, 1914, threaten to remove said meter because said plaintiff refused to pay a reasonable charge for meter rental, but denied that such charge was in conflict with or in violation of said ordinance. The answer further alleges that shortly after the passage of the ordinance, and about the time that the defendant entered upon the business of furnishing electricity for light and other purposes, it adopted and promulgated a rule wherein it required patrons who desired electricity furnished them by meter to deposit the sum of $12 to cover the cost of putting in and establishing an electric meter for said

purpose, or, where said deposit was not made, said rule required the patron taking electricity by meter measurement to pay the sum of 25 cents a month as meter rent; that said rule was just and reasonable, and that the meter rent charged was no more than sufficient to pay reasonable interest upon the money expended for purchasing and installing a meter and the cost of reading, inspecting and caring for the same; that the plaintiff for many years had been a patron of the defendant, and had knowledge of the said rule long previous to the time he requested the defendant to install the meter mentioned in the petition; that several years before said time the defendant had installed in the plaintiff's residence a meter, and at said time notified the plaintiff of the said rule, and the plaintiff at that time elected to, and did, make the deposit mentioned; that, after the meter mentioned in the petition was placed and installed for the plaintiff, the plaintiff for seven months paid said 25 cents a month as rental, and when he requested and had said meter put in he knew of said rule, and by said request agreed with this defendant to pay said rental; that at the time of the approval of said ordinance and the acceptance of the same by the defendant, there existed a usage throughout the state of Nebraska in cities of the class of Auburn having electric light plants that, in addition to the charge made for the electricity furnished, the lighting company did make a reasonable charge per month as rent for meters, and that this usage generally prevailed and was well known to the parties to said contract at the time the same was made; that it was contemplated at the time of making said contract that the defendant would have the right to make a reasonable charge as rent for meters or to require a deposit therefor; that this charge should be in addition to the sum charged for electricity furnished.

The plaintiff filed a reply. On the 28th of April, 1914, the court rendered its judgment finding for the plaintiff and against the defendant. The facts alleged by the plaintiff in his petition were found to be true, and the

court held that the effort of the defendant to collect rental for the use of the meter was in violation of the said Ordinance No. 189, and rendered a judgment in favor of the plaintiff. The court specifically found that the rule of the company requiring the deposit of a certain sum of money in place of the meter was a violation of the ordinance.

The plaintiff, McIninch, testified that he had no other means of measuring the electricity to be consumed for the purpose of lighting his office except this particular meter, which the defendant threatened to remove unless the plaintiff paid the rental demanded; that his office was his place of business, and that he had no other means of lighting his office except by electricity; that he was frequently required to be in his office at night and to use the lights, and without the lights he would be greatly damaged, and without the meter he would have no means of ascertaining how much electricity was consumed; that Mr. Elliott, representing the defendant company, called at his office and demanded that he pay the rental charge, and stated that, if he did not do so, he would take the meter away and deprive him of the use of it. Elliott also stated at the same time that he had taken out the meter of Mr. William B. Smith, a patron of the company at Auburn. McIninch also objected because, if the meter should be taken out, it would deprive him of the meter rate and would increase his electric light bill; that without the meter he could not have the benefit of the meter rate.

Evidence was introduced which tended to show that in some of the towns where there is electric light there is a custom to charge for the use of the meter. Whatever the custom may be in certain towns in the state, the ordinance only contemplates a charge for the electricity used. The ordinance fixes the maximum rate that the defendant can charge for the use of electricity at 15 cents per 1,000 watts. The provision concerning the putting in of meters reads: "And it shall be compulsory upon said

electric light and power company to put in electric meters when required by patrons of said company." So far as we can see, the defendant was obliged to put in the meters when requested to do so. It was a burden which the defendant assumed when the ordinance was passed and it accepted it. The plaintiff requested defendant to put in the meter.

In *Smith v. Birmingham Water Works Co.*, 104 Ala. 315, 325, there was an action to enjoin a private water company from cutting off the plaintiff's water supply and from removing a meter. The court, among other things, said: "In all cases where the defendant has the right to charge for water by measurement, and demand pay for water furnished, it is incumbent on the respondent to furnish meters." The court said the fact that the water company had the right to charge and collect by measurement fixed the matter of furnishing the meter, and the company had to do it.

When the article sold is sold by measurement, the only practicable way in which to ascertain the quantity sold is by the use of a meter. This would imply that the meter is part of the necessary equipment of the company.

In *Albert v. Davis*, 49 Neb. 579, it was held, in substance, that a grant of power to fix and collect charges for the use of water meters excludes by implication the power to compel consumers to furnish their own meter.

In *Spring Valley Water Works v. City and County of San Francisco*, 82 Cal. 286, 6 L. R. A. 756, 16 Am. St. Rep. 116, it was held that an ordinance requiring that the corporation furnishing water shall provide the means necessary for its measurement is not an unreasonable regulation. The court added that the expense of the meter could not be imposed on the consumer. The ordinance provided: "All persons owning or occupying houses used for any purpose shall have the right to determine whether they shall receive and pay for water supply under the meter rates, and on notification to the person, company or corporation so supplying water, to furnish and place a

meter within a period of thirty days to register the water supply, and thereafter shall charge only for the water so used;" etc.

The ordinance, together with the report of the California case cited above, including the opinion of its supreme court, may be found in Municipal Reports of San Francisco, 1888-1889, page 242, and on page 268 of said report, at paragraph 4, is the language of the court in construing the section of the ordinance quoted. There is cited in support thereof *Red Star Steamship Co. v. Jersey City*, 45 N. J. Law, 246.

An electric light plant in the position of the defendant in this case becomes a public service corporation whenever the ordinance is passed and its terms are accepted. There seems to be no provision in the ordinance that the company has any authority to collect for the use of meters or to demand a deposit in place of the meter. We cannot add to the conditions of the contract.

The judgment of the district court is right, and it is

AFFIRMED.

SEDGWICK, J., not sitting.